LANDSCAPE SPECIALTIES, INC., Plaintiff,

v.

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 806, AFL–CIO, Southern California District Council of Laborers, Laborers' International Union of North America and Covington Brothers Construction Co., Inc., Defendants.

Civ. No. 78–1445–HP.

United States District Court, C. D. California.

April 25, 1979.

Jackson E. Chandler, Downs & Chandler, La Verne, Cal., for plaintiff.

Julius Reich, Reich, Adell, Crost & Perry, Los Angeles, Cal., and Robert J. Connerton, Arthur M. Schiller, Theodore T. Green, Washington, D.C., for defendant Laborers' Intern. Union of North America, AFL–CIO.

Kindel & Anderson, Angelo J. Palmieri, Santa Ana, Cal., Frank C. Rothrock, John J. Stumreiter, Los Angeles, Cal., for defendant Covington Bros., a corporation.

PREGERSON, District Judge.

This matter is before the court on defendant Covington Brothers Construction Company's motion to dismiss for failure to state a cause of action and its request for attorney's fees. After considering the pleadings, the memoranda of law, and the oral argument of the parties on October 2, 1978, the court has determined that the motion to dismiss should be granted without leave to amend and that the request for attorney's fees should be denied.

The facts, as set forth in plaintiff's complaint, are as follows.[1] In March 1977, plaintiff Landscape Specialities ("Landscape"), a landscape subcontractor, entered into contracts with defendant Covington Brothers, a builder and developer in Southern California, to perform the landscape and irrigation work on two housing projects, Summerwind Homes and Tract 26–290. At that time, Covington Brothers and the defendant unions, Laborers' International Union of North America, Local 806, AFL–CIO and the Southern California District Council of Laborers,[2] were parties to an agreement known as the Southern California Master Labor Agreement (1974–1977).[3] This Agreement prohibited Covington Brothers from subcontracting any jobsite work except to union firms.[4] After Landscape entered into the contracts with Covington Brothers, the defendant unions demanded that Landscape sign a collective bargaining agreement with them, but Landscape refused. The unions responded by picketing the two housing projects, and delays in construction ensued. Covington Brothers informed Landscape that it must either sign a collective bargaining agreement with the unions or leave the projects. Landscape chose to leave. During this period, Covington Brothers also promised Landscape that it would be awarded subcontracts on three other housing projects. In

1. Pursuant to a Stipulation and Order of February 7, 1979, the complaint was amended to incorporate by reference two collective bargaining agreements, the Southern California Master Labor Agreement (1974–1977) and the Southern California Master Labor Agreement (1977–1980).

2. Defendant Laborers' International Union of North America was dismissed from this action by order of the court on October 6, 1978.

3. The Agreement was entered into between four associations of general contractors, on behalf of their respective members, and the defendant Southern California District Council of Laborers, on behalf of itself and its affiliated local unions that had jurisdiction over the work in the territory described in the Agreement. The complaint, read liberally, indicates that Covington Brothers was a member of one of the contractors' associations, and that Local 806 of the Laborers' International Union of North America was one of the affiliated locals covered by this Agreement.

4. Article I(C)(2) of the Agreement provides:
   If the Contractor, party hereto, shall subcontract work as defined herein, provision shall be made in such subcontract for the employment of workmen furnished by an AFL–CIO Building and Construction Trades Union or the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America for the observance by said subcontractor and his subcontractors of all of the terms of this Agreement, including, but not limited to, the payment of wages and fringe benefits.
   Article I(B)(3) also provides:
   The operation of equipment, the performance of labor, the furnishing and installation of materials or, the delivery of materials, supplies or equipment to be used on or transported to or from the project which is to be done by the Contractor directly or which he contracts out to another Contractor, will be performed in accordance with the appropriate labor agreement covering the work when within the jurisdiction of the Union signatory hereto or when within the jurisdiction of another union affiliated with the Building and Construction Trades Department of the AFL–CIO, or with the International Brotherhood of Teamsters.

July of that year, however, Covington withdrew its promises. This occurred after Covington, and the Southern California District Council of Laborers and Local 806, had entered into another Southern California Master Labor Agreement,[5] dated 1977–1980 (effective July 1, 1977), an agreement that also prohibited subcontracting except to union firms.[6]

In the first two causes of action, Landscape seeks to hold Covington Brothers liable under § 303 of the Taft-Hartley Act, 29 U.S.C. § 187. This statute, in subsection (a), makes it unlawful for any "labor organization" to engage in any activity defined as an unfair labor practice in § 8(b)(4) of the National Labor Relations Act (N.L.R.A.), 29 U.S.C. § 158(b)(4). Subsection (b) of § 303 provides that any person injured as a result of any violation of subsection (a) shall have a cause of action for damages.

■ Covington Brothers is a builder and developer and is not a labor organization. See N.L.R.A. § 2(5), 29 U.S.C. § 152(5). Thus, it cannot be held liable under § 303 of the Taft-Hartley Act and the first two causes of action must be dismissed.

A violation of the antitrust laws is alleged in the third cause of action. There, Landscape alleges that its departure from the Summerwind and Tract 26–290 housing projects in or about April 1977, and its further loss of the promised subcontracts on three additional housing projects in July 1977, were the result of unlawful subcontracting provisions contained in the two Master Labor Agreements entered into between Covington Brothers and the defendant unions.

The subcontracting provisions are exempt from the antitrust laws if they come within the terms of the construction-industry proviso to N.L.R.A. § 8(e), 29 U.S.C. § 158(e). *See Connell Construction Co., Inc. v. Plumbers and Steamfitters Local No. 100*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975). This proviso permits "an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work."

The threshold question is whether the subcontracting provisions in the two Agreements, on their face, fall within the § 8(e) proviso. The defendant unions are labor organizations, Covington Brothers is an employer in the construction industry, and the provisions limit subcontracting of landscape and irrigation work at housing projects to union firms. Thus, as applied to the plaintiff, the provisions on their face satisfy the

---

5. As was true with the Southern California Master Labor Agreement (1974–1977), see n. 3 *supra*, Covington Brothers and Local 806 of the Laborers' International Union of North America are not specifically named as parties to the 1977–1980 Agreement. But the complaint, again read liberally, indicates that Covington Brothers is bound by the Agreement because it is a member of one of the general contractors' associations named as parties to the Agreement, and that Local 806 is bound because it is affiliated with the defendant Southern California District Council of Laborers, who is a party to the Agreement, and because it has jurisdiction over work in the territory described in the Agreement.

6. Article IV(D) of the 1977–1980 Agreement provides:

The Contractor agrees that neither he nor any of his subcontractors on the jobsite will subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure or other work (includ-

ing quarries, rock, sand and gravel plants, asphalt plants, ready-mix concrete plants, established on or adjacent to the jobsite to process or supply materials for the convenience of the Contractor for jobsite use), except to a person, firm or corporation, party to an appropriate current labor agreement with the appropriate Union, or subordinate body signatory to this Agreement.

Article IV also sets forth, in paragraph E, an alternate subcontracting provision that is to go into effect "[i]n the event that enforcement of paragraph D is restrained by issuance of an injunction by a United States District Court upon the petition of a Regional Director of the National Labor Relations Board, or otherwise . . . .." The court is unaware of any such injunction having been issued, and does not itself intend to issue such an injunction. Therefore, it is unnecessary to consider the substance of the alternate subcontracting provision.

§ 8(e) proviso.[7] This determination, however, is not dispositive because the court must next determine whether the provisions meet the limitations placed on the scope of the § 8(e) proviso by the Supreme Court in *Connell.*

In *Connell*, the Court imposed significant limitations upon the protection afforded subcontracting agreements under the § 8(e) construction-industry proviso. The Court held that the proviso's "authorization extends only to agreements in the context of collective-bargaining relationships and . . possibly to common-situs relationships on particular jobsites as well." *Id.* at 633, 95 S.Ct. at 1840 (footnote omitted). The Court noted that the proviso was adopted by Congress because of the close community of interests between jobsite contractors and their subcontractors. The Court further indicated that the proviso may serve the narrower function of alleviating " 'the frictions that may arise when union men work continuously alongside nonunion men on the same construction site.' " *Id.* 421 U.S. at 630, 95 S.Ct. at 1839, *quoting from Drivers Local 695 v. N.L.R.B.*, 124 U.S.App.D.C. 93, 99, 361 F.2d 547, 553 (D.C. Cir. 1966).

Although the subcontracting agreement in *Connell*, on its face, came within the protective confines of the § 8(e) proviso, the Court determined that such protection was not justified because the agreement did not satisfy the limitations and policies discussed above. First, the subcontracting agreement was defective in that it was not contained in a collective bargaining agreement. Second, the Union, Local 100, was not seeking to protect the general contractor's em-

ployees from working alongside nonunion employees—Local 100 simply had no interest in organizing and representing the general contractor's employees. Moreover, the Local was not seeking to protect its own members from working alongside nonunion employees. The agreement merely precluded the use of nonunion subcontractors for work within the trade jurisdiction of Local 100, i. e., work in the plumbing and mechanical trades. Third, Local 100 was not trying to organize a nonunion subcontractor on the general contractor's building project but rather was trying to pressure all plumbing and mechanical trades subcontractors in the Dallas area to recognize the Local as the representative of their employees. The Court was concerned that agreements sanctioned by the § 8(e) proviso should not become unlimited organizational weapons but rather should be aimed primarily at alleviating the frictions that may arise when union and nonunion men work alongside one another at particular construction sites.

Applying *Connell's* analysis of the § 8(e) proviso to the subcontracting provisions at issue here, the court finds that the provisions are sanctioned by the § 8(e) proviso and thus are exempt from antitrust liability.

First, an examination of the subcontracting provisions readily demonstrates that they appear in two comprehensive labor relations agreements. Thus, it would seem that, as required by *Connell*, they are subcontracting "agreements [made] in the context of collective-bargaining relationships

---

7. The court notes that certain sections of the subcontracting provisions found in the Master Labor Agreement (1974–1977) sections not applicable to this plaintiff—may not be allowable under either the § 8(e) proviso or § 8(e) itself. *Compare* Articles I(B)(3), I(C)(2), and XII of the Southern California Master Labor Agreement (1974–1977) (subcontracting to union firms for repair of equipment and for delivery of materials to the jobsite) *with Acco Construction Equipment, Inc. v. N.L.R.B.*, 511 F.2d 848, 851–52 (9th Cir. 1975) (the § 8(e) proviso does not apply to subcontracting for repair of equipment and for delivery of supplies or materials to the jobsite) *and with* R. Gorman, *Basic Text on*

*Labor Law* 266 (1976) (§ 8(e) itself prohibits "union signatory" clauses, i. e. contract provisions that bar subcontracting to nonunion firms). This court, however, need not decide this question. For even if these sections do violate § 8(e) and the § 8(e) proviso, the illegality is of no help to plaintiff since: (1) the sections do not apply to it, and (2) the sections, if invalid, could be severed, leaving the remainder of the subcontracting provisions intact under the reasoning of *Meat and Highway Drivers Local No. 710 v. N.L.R.B.*, 118 U.S.App.D.C. 287, 335 F.2d 709 (D.C. Cir. 1964). *See also N.L.R.B. v. Joint Council of Teamsters No. 38*, 338 F.2d 23, 30 (9th Cir. 1964).

. . .." *Id.* 421 U.S. at 633, 955 S.Ct. at 1840. But Landscape alleges that Covington Brothers as a general contractor employs no construction workers, and argues that therefore the Master Labor Agreements are empty shells except for the clauses that concern subcontracting. Landscape concludes that the subcontracting restraints are not included in collective bargaining agreements within the meaning of *Connell.*

■ Taking Landscape's factual allegation as true, as the court must on this motion to dismiss, its argument nevertheless runs counter to the statutory scheme of the National Labor Relations Act. The Act generally provides that an employer and a union may sign a collective bargaining agreement, which recognizes the union as the exclusive bargaining representative of all employees, only if the union represents a majority of the employees. N.L.R.A. §§ 7, 9(a), 29 U.S.C. §§ 157, 159(a); *N.L.R.B. v. Local No. 103, International Association of Bridge, Structural & Ornamental Iron Workers,* 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978). Section 8(f) of the Act, 29 U.S.C. § 158(f), however, which validates so-called "pre-hire" agreements between unions and employers in the construction industry, provides an exception to this rule. Under § 8(f), a valid collective bargaining agreement may be entered into even though the union has not been established as representing the majority of the employer's employees, and even though the employer may not have any employees falling within the union's jurisdiction at the time the agreement is made. In effect, Landscape is arguing that subcontracting restraints contained in a pre-hire agreement are not contained in a collective bargaining agreement within the meaning of *Connell.* But when Congress passed §§ 8(e) and (f), it knew that the pre-hire agreement would be the most common type of collective bargaining agreement in the construction industry, *id.* 98 S.Ct. at 659, and thus knew that subcontracting provisions would often be included in pre-hire agreements. Congress, therefore could not have intended that a subcontracting provision would be invalid under the construction-industry proviso simply because the provision is contained in a pre-hire agreement and not in an agreement between an employer and a union that has achieved majority status among the employees. Thus, for purposes of the *Connell* analysis, a subcontracting provision contained in a pre-hire agreement is a subcontracting provision that was made in the context of a collective bargaining relationship. *See Connell Construction Co., Inc.,* 421 U.S. at 631 n. 10, 95 S.Ct. 1830.

■ An examination of the two Master Labor Agreements demonstrates that they are valid pre-hire agreements.[8] It follows,

8. Section 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f), sets forth the conditions under which a labor agreement may be considered a valid pre-hire agreement.

First, the employer must be engaged primarily in the building and construction industry, the labor organization must have members who are building and construction employees, and the agreement must cover employees engaged (or who, upon their employment, will be engaged) in the building and construction industry. Plainly these requirements are met here.

Second, § 8(f) permits the execution of a collective bargaining agreement even though "the majority status of [the] labor organization has not been established under the provisions of section 9 of this Act prior to the making of [the] agreement . . .." As noted in the body of this opinion, *supra* at 20–21, an agreement with a minority union is normally prohibited. Landscape's allegation, taken as true, that Covington Brothers has no construction employees, indicates that, with regard to Covington's employees, the majority status of defendant Local 806 of the Laborers' Union (and derivatively, the majority status of defendant Southern California District Council of Laborers) was not established prior to the making of either of the Master Labor Agreements. But, as stated, this does not invalidate the agreements.

Third, § 8(f) permits the execution of a collective bargaining agreement even though the "agreement requires as a condition of employment, membership in [the] labor organization after the seventh day following the beginning of such employment or the effective date of the agreement, whichever is later . . .." In non-§ 8(f) agreements, on the other hand, membership can be required only after the thirtieth day following employment or the effective date of the agreement, whichever is later. N.L.R.B. § 8(a)(3), 29 U.S.C. § 158(a)(3). Both of the Master Labor Agreements comply with this condition of § 8(f) in that both provide that an

therefore, that the subcontracting provisions at issue here were agreed to "in the context of collective-bargaining relationships . . .." *Id.* at 633, 95 S.Ct. at 1840. This conclusion is important in determining whether the subcontracting provisions satisfy *Connell's* analysis of the § 8(e) proviso. The National Labor Relations Board, whose construction of the labor statute is entitled to considerable respect, *Local No. 103, International Association of Bridge, Structural & Ornamental Iron Workers*, 98 S.Ct. at 660, has recently held that "[t]he bottom line of the Court's opinion [in *Connell*] . . . is that the construction industry proviso to Section 8(e) permits subcontracting clauses [made] . . in the context of a collective-bargaining relationship . . .." *Carpenters, Local 944 (Woelke & Romero Framing)*, 99 L.R.R.M. 1580, 1588 (1978). In other words, the Board said that if the requisite collective bargaining relationship is found, as is the case here, then that *alone* demonstrates that the subcontracting clause in question complies with the limitations set down in *Connell*.

In concluding that the subcontracting provisions applicable to Landscape meet the *Connell* limitations, the court, however, need not rely solely on the fact that the provisions were agreed to in the context of collective bargaining relationships. For the court finds that the subcontracting provisions also carry out the philosophy that underlies the § 8(e) construction industry proviso: the provisions deal with the close community of interests between jobsite contractors and their subcontractors and act to alleviate the frictions that may arise when union and nonunion men work alongside one another at a construction site. The subcontracting provisions prohibit the use of nonunion subcontractors on all work done at the construction site. As noted above, the court must accept as true Landscape's allegation that Covington Brothers itself employs no construction workers. Nevertheless, the subcontracting provisions serve the policies behind the § 8(e) proviso because the provisions protect the employees of subcontractors, including those who belong to defendant unions, from working alongside nonunion employees. Furthermore, if and when Covington Brothers hires construction workers who are members of defendant unions, these workers will also be protected from working alongside nonunion employees. This is unlike the situation in *Connell* where the union was neither seeking to protect the general contractor's employees nor its own members in this regard. Moreover, unlike *Connell*, the unions here were trying to organize a particular subcontractor (the plaintiff) on particular building projects of the general contractor. The unions were not, as in *Connell*, attempting to use subcontracting agreements as an organizational weapon to unionize all subcontractors in a particular area.

In conclusion, the subcontracting provisions contained in the Southern California Master Labor Agreement (1974–1977) and

---

employee must join the appropriate union on the eighth day after employment has commenced or the execution of the agreement, whichever is later. Southern California Master Labor Agreement (1974–1977), Article II(F); Southern California Master Labor Agreement (1977–1980), Article II(D) and Appendix K, Article III(C).

Fourth, an agreement is not invalid under § 8(f) if it "requires the employer to notify [the] labor organization of opportunities for employment with such employer, or gives such labor organization an opportunity to refer qualified applicants for such employment . . .." In other words, under § 8(f), the union is permitted to establish a hiring hall for the employment of workers by the employer. Both of the Master Labor Agreements adopt a hiring-hall procedure for the employment of laborers that complies with § 8(f). Southern California Master Labor Agreement (1974–1977), Article II(D); Southern California Master Labor Agreement (1977–1980), Appendix K, Article III.

Finally, an agreement is not invalid under § 8(f) if the "agreement specifies minimum training or experience qualifications for employment or provides for priority in opportunities for employment based upon length of service with such employer, in the industry or in the particular geographical area." The Master Labor Agreements are not in violation of this provision. See Southern California Master Labor Agreement (1974–1977), Article II(D); Southern California Master Labor Agreement (1977–1980), Appendix K, Article III(A)(7).

the Southern California Master Labor Agreement (1977–1980) are, in the context of this case, permitted by the construction industry proviso to § 8(e) and thus are exempt from the antitrust laws.[9] The third cause of action, therefore, fails to state a claim for relief.

██ The remaining causes of action against Covington Brothers, numbers four and five, set forth claims under state law. These causes must also be dismissed since all of the federal question claims against Covington Brothers have failed and since the doctrine of pendant party jurisdiction has been rejected in this circuit. *Ayala v. United States*, 550 F.2d 1196 (9th Cir. 1977), *cert. dismissed*, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978).

THEREFORE, IT IS ORDERED that plaintiff's complaint as against defendant Covington Brothers Construction Company be dismissed without leave to amend, and that Covington Brothers' request for attorney's fees be denied.

---

**9.** This holding makes it unnecessary for the court to address the question of whether or not the subcontracting provisions are immune from the antitrust laws under the so-called nonstatutory labor exemption.